UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**TREMAINE HOLMES**,                                          :
                                                              :
                    Petitioner,        :
                                                              :   **MEMORANDUM DECISION AND**
       – against –                               :   **ORDER**
                                                              :
                                                              :   20-CV-2769 (AMD) (LB)
**J. LAMANNA**,                                               :
                                                              :
                    Respondent.       :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The petitioner, currently incarcerated at Greenhaven Correctional Facility, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On December 8, 2015, the petitioner was convicted after a jury trial of murder in the second degree and attempted murder in the second degree. (N.Y. Penal Law § 125.25.) On January 4, 2016, the court sentenced the petitioner to an indeterminate prison term of 20 years to life for the murder, and a determinate 20-year term for the attempted murder, to be followed by five years of post-release supervision. The petitioner claims that the prosecutor's comments in summation and the trial court's charge on identification violated his right to a fair trial. (ECF No. 1 at 2.) For the reasons that follow, the petition is denied.

## BACKGROUND[1]

      On August 15, 2013, the petitioner shot and killed Perice Brown, and then shot at Taleeb Maxime and Darryl Brown, striking Maxime in the arm. (*Id*. at 10-11.) After Maxime identified

---

[1] Because the petitioner was convicted, I summarize the facts in the light most favorable to the verdict. *See United States v. Wasylyshyn*, 979 F.3d 165, 169 (2d Cir. 2020) (citing *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012)).

the petitioner as the shooter, detectives searched for him, and found him in Binghamton, New York, about two months after the shooting. (ECF No. 8-1 at 13, 19-20, 57-58.) Maxime and a second witness identified the petitioner as the shooter.[2] (*Id.* at 21-28). The petitioner was arrested and charged with murder, attempted murder, criminal possession of a weapon in the second degree, attempted assault in the first degree and assault in the second degree. (ECF No. 8 at 2.)

I. **Trial**

On December 1, 2015, the petitioner went to trial before the Honorable Vincent Del Giudice and a jury. (ECF No. 8-1 at 263.) The evidence at trial established that Perice Brown, his cousin Darryl Brown, and Taleeb Maxime were outside the Marlboro Houses, at 30 Avenue V in Brooklyn. (*Id.* at 387.) A man called out to Perice Brown, and they talked for a few minutes; the man told him to wait in the lobby, and left through the stairwell door. (*Id.* at 389.) Shortly thereafter, the petitioner came out of the same door and started shooting at Perice Brown. (*Id.* at 390-92.) Maxime recognized the petitioner from the Marlboro Houses and knew him by the name "Main."[3] (ECF No. 8-1 at 408-09.) As Maxime and Darryl Brown ran from the building, the petitioner chased them, and kept shooting, striking Maxime in the arm. (*Id.* at 409.) Maxime spoke to detectives, who tried to find the petitioner, eventually locating and arresting him two months later in Binghamton.[4] (*Id.* at 13, 411.)

---

[2] Detective Michael DeOrio testified about the line-up at a pre-trial suppression hearing. (ECF No. 8-1 at 27-28.) The second identifying witness, whom the detective did not name at the hearing, said that the petitioner was "[t]he guy from the 15th floor," who was "shooting at the guys running." (*Id.* at 28.) The witness did not testify at the trial.

[3] Detective David Acres, an investigator for the prosecution, tried unsuccessfully to locate Darryl Brown for the trial. (ECF No. 8-1 at 679-84.)

[4] Maxime had two open warrants for his arrest for offenses that occurred around 2008; both warrants were dismissed. (ECF No. 8-1 at 420-21, 454, 746.)

2

The petitioner did not put on any evidence.

At a charge conference, the petitioner's lawyer asked Judge Del Giudice to give an identification charge, and agreed that an expanded identification charge was not necessary:

> Ms. Clark: [Y]our Honor, I don't know if I asked this, is the Court giving an identification charge?
>
> The Court: You didn't ask for it.
>
> Ms. Clark: I'm asking for an identification charge. . . .
>
> The Court: Concerning the identification charge, . . . there's more than one witness on this case, it's multiple witnesses so I don't think you get the full charge. You just get the generic charge[,] correct?
>
> Ms. Clark: Yes, the generic one.

(*Id.* at 707-10.)

During her summation, defense counsel attacked Taleeb Maxime's credibility. She argued that "this case comes down to whether or not you believe Taleeb Maxime beyond a reasonable doubt." (*Id.* at 715.) She characterized Maxime's testimony as inconsistent, and emphasized that his mother had kicked him out of her house, that he smoked marijuana regularly, and that he had open warrants. (*Id.* at 725-26.) She also maintained that Maxime could not have seen the petitioner from his vantage point in the lobby of 30 Avenue V:

> [W]e don't even know if the shooter came out of that door, because [Maxime] didn't see the shooter [come] out of that door. It's impossible. His testimony is virtually impossible to have seen that and is unreliable.

(*Id.* at 729.) She told the jury that Maxime's drug use made him unreliable:

> You have to ask yourself, is Taleeb Maxime the reliable witness to convict somebody of murder? This is a witness that uses drugs. And I submit to you, ladies and gentlemen, his Honor will explain to you how you can use drugs or anybody's lifestyle to determine their credibility. That's part of your job, to determine somebody's credibility.

3

(*Id.* at 730.)  She described Maxime as "a witness that uses drugs, more than once in a blue moon, [and] says he can see through walls" (*id.* at 734), and argued that his testimony was "full of inconsistencies, [and] full of reasonable doubt."  (*Id.* at 735.)

In her summation, the prosecutor responded to defense counsel's arguments about Maxime:

> [Maxime] is not the one on trial.  Let's evaluate how he did while he was sitting here during this trial and talking to you.  What was his demeanor like on the stand?  What did he tell you?  How did he react?  How did he answer questions?  Because he was open and honest, he was an open book.

(*Id.* at 746.)  Judge Del Giudice sustained defense counsel's objection that the prosecutor was "vouching" for Maxime's credibility: "Counsel, don't vouch for the credibility of the witness.  Ladies and gentlemen, it's up to you to determine the person's credibility."  (*Id.*)  The prosecutor emphasized that Maxime was consistent about key details in the case:

> I submit to you, ladies and gentlemen, that consistency, between [the] interview by the detective, [the] audio statement by the police—by the D.A.'s office, [the] grand jury testimony, the time that [Maxime] identified the defendant at the lineup and while he sat before you during direct examination and cross examination, [he was] consistent each and every time, I submit to you. . . .  That right there is your guarantee that you can believe him.

(*Id.* at 750.)  The court overruled defense counsel's objection to these comments and the prosecutor's rhetorical question: "[S]o what other reasons would he have other than to tell you the truth[?]"  (*Id.* at 752-53.)

The prosecutor then highlighted the evidence that corroborated Maxime's testimony, and concluded each comparison by saying, "Believable," or "You can believe him."  (*Id.* at 757-58.)

> Also what corroborates . . . what [Maxime] is telling you is that [the petitioner] was shooting, and when he was shooting he was shooting by the door.
>
> What does the ballistics guy tell you, Detective Painton?  That when a semiautomatic handgun is fired, the bullet ejects through the muzzle, the shell casing ejects through the back.  There are several shell casings in front of 30 Avenue V.  Again, corroborating what [Maxime] tells you, [the petitioner] came out of the

4

> stairwell, stood in front and shot Perice while he was at the door. Check. Believable.

(*Id.* at 758.) When counsel objected to the word "believable," Judge Del Giudice advised the jury:

> Counsel is trying to point out to you various facts that she believes are corroborated by the testimony and the forensic evidence. It's up to you to determine whether or not you believe it or not.

(*Id.*) The prosecutor concluded her remarks on Maxime's credibility:

> Ladies and gentlemen, I submit to you that Mr. Maxime, you can believe him. That he's credible. You can trust his identification of the defendant as the person that he actually saw. And from the corroborating physical evidence, the medical evidence, the medical examiner's evidence, that we have proven the defendant's guilt beyond a reasonable doubt with just that, with simply the testimony of Mr. Maxime, adding on top of that the physical evidence, adding on top of that the corroboration.

(*Id.* at 772.) Defense counsel argued that the prosecutor "vouched for the credibility of her witness," and moved for a mistrial on that basis, which Judge Del Giudice denied. (*Id.* at 786-90.)

In his final charge, Judge Del Giudice instructed the jurors on evaluating witness credibility:

> You folks are the sole judges of the credibility of every witness who has appeared before you. You know, in reaching your conclusions as to the weight that you're going to give to any witness'[s] testimony, please use your common sense, okay. Consider the witness'[s] demeanor on the stand. Consider the witness'[s] manner of testifying, both on direct and cross examination. Consider the factual probability or the improbability of the statements of every witness when viewed in light of all the evidence in the case.
>
> You know, there's no magic formula by the way one evaluates the testimony, but you bring into this courtroom all the experience and background of your everyday lives. In your everyday affairs you determine for yourself the reliability or unreliability of statements made to you by others. The same tests that you use in matters of this importance in your everyday lives are the same tests you should apply in your deliberations.

5

> However, you may not utilize any professional knowledge or specialized expertise that you have to insert into the deliberations facts not established in the courtroom during the trial with respect to any material issue in this case.

(*Id.* at 820-21.) He also gave a charge on identification:

> As you know, one of the issues in this case is whether the defendant has been correctly identified as the person who committed the crime alleged. The People have the burden of proving beyond a reasonable doubt not only that a crime has been committed but that the defendant is the person who committed the crime, okay.
>
> So as jurors you must examine with great care all the evidence on the issue of identification. So even if you are convinced beyond a reasonable doubt that a crime was committed, you cannot convict the defendant of that crime unless you are also convinced beyond a reasonable doubt that the defendant is the person who committed the crime.
>
> So because the law is not so much concerned about the number of witnesses called as with the quality of the testimony given, the law permits a guilty verdict based upon the testimony of only one witness identifying the defendant as the person who committed the charged crime. So if after careful consideration of all the evidence you are not satisfied or convinced that the identity of the defendant as the person who committed the crime charged has been proven beyond a reasonable doubt, then you must find him not guilty, all right.
>
> However, if you are satisfied that the identity of the defendant has been proven beyond a reasonable doubt, then you must find the defendant guilty of that crime.

(*Id.* at 822-24.)

**II.     The Verdict and Sentence**

The jury found the petitioner guilty of murder in the second degree and attempted murder in the second degree. (*Id.* at 859-62.) On January 4, 2016, the court sentenced the petitioner as a second violent felony offender as described above. (*Id.* at 879.)

## PROCEDURAL HISTORY

**I.  Direct Appeal**

The petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department, arguing that the prosecutor improperly "elicit[ed] a detective's testimony that he arrested [the petitioner] after the lineup," and vouched for Maxime's credibility in her

6

summation, and that the trial court should have given an expanded identification charge to the jury. (ECF No. 8-2 at 3-4.)

The Appellate Division unanimously affirmed the petitioner's conviction. *People v. Holmes*, 167 A.D.3d 1039 (2d Dep't 2018). With respect to the petitioner's claims about the prosecutor's summation and the jury instructions, the appellate court held:

> The [petitioner's] contention that he was deprived of a fair trial by remarks made by the prosecutor during summation is without merit. The challenged remarks either were fair comment on the evidence, were a fair response to defense counsel's summation, or do not require reversal as they were sufficiently addressed by the Supreme Court's instructions to the jury.
>
> The defendant's claim that he was deprived of a fair trial by the Supreme Court's failure to give the jury an expanded identification charge is unpreserved for appellate review, as defense counsel merely requested the "generic" identification charge. In any event, the contention is without merit. The court's charge constituted a correct statement of the law which sufficiently apprised the jury that the reasonable doubt standard applied to identification. Moreover, when evaluated against the background of all the evidence presented, the failure to expand the charge on identification did not deprive the defendant of a fair trial.

*Id.* at 1039 (quotation marks and citations omitted). The court also rejected the petitioner's claim about the detective's testimony:

> Here, although the only direct evidence connecting the [petitioner] to the commission of the crimes charged was the identification testimony of a single witness, the evidence of the [petitioner's] guilt, without reference to the error, was overwhelming. The record demonstrates that the witness watched as the [petitioner] approached the witness in a well-lit area and that the [petitioner's] face was not obstructed in any way. The witness testified that he recognized the [petitioner] at the time of the shooting because the witness had seen the [petitioner] around the neighborhood on prior occasions. Furthermore, although the physical evidence recovered from the crime scene did not link the [petitioner] to the crime, it was nevertheless consistent with the witness's account of the shooting. Under the circumstances, the testimony of the witness identifying the defendant was "unusually credit-worthy."

*Id.* at 1041. On March 25, 2019, the Court of Appeals denied the petitioner's application for leave to appeal. *People v. Holmes*, 33 N.Y.3d 949 (2019).

7

**II.      Habeas Corpus Petition**

On June 23, 2020, the petitioner filed this petition, raising the same claims he raised on appeal: that the prosecutor improperly vouched for the witness's credibility, and that the court should have given an expanded identification charge.[5]  (ECF No. 1 at 1-2.)  The respondent opposes.  (ECF No. 8.)

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits.  28 U.S.C. § 2254(a).  A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015).

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case.

---

[5] Although the petitioner is represented by counsel on this petition, counsel has simply copied the headings from the petitioner's brief to the Appellate Division, and provides no further explanation for those arguments.  (ECF No. 1.)

8

*Id.* at 412-13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A petitioner can seek federal habeas corpus relief only after he exhausts state court remedies and gives the state courts a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

### I. The Prosecutor's Summation Remarks

The petitioner renews his claim that the prosecutor vouched for Taleeb Maxime's credibility, depriving him of a fair trial.[6] (ECF No. 1 at 2.) The Appellate Division's decision

---

[6] The respondent's argument that the petitioner has not exhausted this claim is not persuasive. (ECF No. 8 at 9; ECF No. 11.) In the petitioner's application for leave for appeal, he wrote that he was "seeking leave on all of the issues raised in the brief filed on behalf of [the petitioner]" with the Appellate Division. (ECF No. 10 at 7.) The petitioner made this claim to the Appellate Division. (ECF No. 8-2 at 3.) Accordingly, the petitioner has exhausted this claim.

9

rejecting this claim is entitled to AEDPA deference, and the petitioner must show that the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A petitioner claiming that the prosecutor committed misconduct in summation must show that the summation "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  It is "well established that the prosecution may not vouch for its witnesses' credibility," *United States v. Newton*, 369 F.3d 659, 681 (2d Cir. 2004) (citing *United States v. Perez*, 144 F.3d 204, 210 (2d. Cir. 1998)), because vouching "may prejudice a defendant by suggesting to a jury that there is additional evidence, not introduced at trial but known to the prosecutor, that supports the witness's credibility," *id*. (citing *United States v. Young*, 470 U.S. 1, 18-19 (1985)), and "may induce the jury to trust the Government's judgment rather than its own view of the evidence." *Id*.  The Second Circuit has instructed courts to consider various factors, especially "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct."  *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002) (citing *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999)); *accord Joseph v. Superintendent*, No. 18-CV-1877, 2020 WL 5645196, at *7 (E.D.N.Y. Sept. 22, 2020).

While vouching is improper, a prosecutor is permitted to respond when defense counsel attacks a witness's credibility.  "[W]hen the defense counsel have attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with 'rebutting language suitable to the occasion.'"  *United States v. Praetorius*, 622 F.2d 1054, 1060-61 (2d Cir. 1979) (quoting *United States v. LaSorsa*, 480 F.2d 522, 526 (2d Cir. 1973)).

Accordingly, a court should evaluate the prosecutor's comments in the context of the defense's summation. *See United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994) (finding that the prosecutor's summation remarks about a witness's credibility were permissible because the defense counsel's summation repeatedly suggested that the witness's testimony was fabricated); *see also McManus v. Vann*, No. CV-18-3800, 2019 WL 3767538, at *12 (E.D.N.Y. Aug. 9, 2019) (finding that the "prosecutor was entitled to rebut defense counsel's summation with contrary assertions" because defense counsel "made several comments on the complainant's credibility during his summation"); *DeFreitas v. Kirkpatrick*, No. 16-CV-638, 2017 WL 2348776, at *15 (N.D.N.Y. May 3, 2017) (finding that the prosecution was allowed to respond to "serious allegations" against a government witness and agent brought up during defense summation), *report and recommendation adopted*, No. 16-CV-638, 2017 WL 2345663 (N.D.N.Y. May 30, 2017); *People v. Overlee*, 236 A.D.2d 133, 144 (1st Dep't 1997) (finding that "[a]n argument by counsel that his witnesses have testified truthfully [was] not vouching for their credibility" because defense counsel questioned the witnesses' credibility), *lv. denied*, 91 N.Y.2d 976 (1998); *People v. Beggs*, 19 A.D.3d 1150, 1151 (4th Dep't 2005) (finding that defense counsel commented on the witnesses' credibility, and that "the comments of the prosecutor were a fair response to the observations of defense counsel on summation and did not deprive defendant of a fair trial"), *lv. denied*, 5 N.Y.3d 803 (N.Y. 2005).

In her summation, defense counsel challenged the testimony of eyewitness Taleeb Maxime, arguing that his background, drug use and arrest history made him unreliable. She also characterized his testimony as inconsistent. (ECF No. 8-1 at 715, 726-30.) Thus, she argued that he was not a "reliable witness to convict somebody of murder," that he could not have seen the petitioner's face from his position in the lobby, and that his testimony was "virtually impossible"

11

and "unreliable." (*Id.* at 734, 726-27.) The prosecutor's remarks—using the evidence to show why Maxime was reliable—were appropriate responses to defense counsel's attack on Maxime.

To the extent that the prosecutor actually "vouched" at one point, the trial judge sustained the objection, instructed the prosecutor not to "vouch for the credibility of the witness," and reminded the jury that "it [was] up to [them] to determine the person's credibility." (*Id.* at 746.) The court explained at another point that the prosecutor was "trying to point out to [them] various facts that she believes are corroborated by the testimony and the forensic evidence," and again reminded the jury that "[i]t [was] up to [them] to determine whether or not [they] believe[d] it or not." (*Id.* at 758.) Moreover, in his final charge, the judge emphasized that the jurors were the "sole judges" of credibility. (*Id.* at 820.)

In short, the prosecutor's summation remarks were appropriate responses to defense counsel's summation, and the trial court's instructions eliminated any possible prejudice.

## II.   The Expanded Identification Charge

The petitioner argues that the trial court should have given an "expanded" identification charge, often given in one-witness identification cases. (ECF No. 1 at 2.) The Appellate Division held that this claim was "unpreserved for appellate review" because "defense counsel merely requested the 'generic' identification charge" and that the claim was in any event "without merit."[7] *Holmes*, 167 A.D.3d at 1039. New York's contemporaneous objection rule "preserves for review only those questions of law as to which 'a protest . . . was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.'" *Reddick v. New York*, No. 14-CV-2809, 2018 WL 4688932, at *7 (E.D.N.Y. Sept. 28, 2018) (quoting C.P.L. § 470.05) (citing

---

[7] As explained above, the trial court did not "refuse" to give an expanded identification charge. Defense counsel did not request one, and consented to the generic identification charge. (*Id.* at 709-10.)

12

*Garcia v. Lewis*, 188 F.3d 71, 78 (2d Cir. 1999)). "New York's contemporaneous objection rule is an independent and adequate state procedural rule that bars federal habeas review." *Id.* (citing *Hamilton v. Lee*, 707 F. App'x 12, 14 (2d Cir. 2017) (summary order)); *see also Hamilton*, 707 F. App'x at 14 (citing *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) and *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir. 2007)). The petitioner has not shown cause for the default or actual prejudice, or that "failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750, and accordingly, his claim about the charge is procedurally barred from federal habeas review. *See Olivo v. Thorton*, No. 05-CV-3237, 2006 WL 2689889, at *11 (S.D.N.Y. Sept. 19, 2006) (finding that the petitioner's claim based on an identification charge was procedurally barred because she did not object at trial and had "not allege[d] cause, prejudice or a fundamental miscarriage of justice"); *see also Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985) ("In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law.").

Moreover, even if the petitioner had preserved the claim for federal habeas review, it fails on the merits. As the Appellate Division held, the "charge constituted a correct statement of the law which sufficiently apprised the jury that the reasonable doubt standard applied to identification." *Holmes*, 167 A.D.3d at 1039.

"The New York Court of Appeals has held that, although expanded identification instructions are preferable, especially when there is a close question of identity, the failure to give such an instruction does not constitute reversible error." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (citing *People v. Whalen*, 59 N.Y.2d 273, 278-79 (1983)). "A trial judge who

gives a 'general instruction on weighing witnesses' credibility and who states that identification must be proven beyond a reasonable doubt has made an accurate statement of the law.'" *Id.* (quoting *Whalen*, 59 N.Y.2d at 279). "The decision whether or not to give an expanded instruction is left in the sound discretion of the trial judge." *Id.* (citing *People v. Knight*, 87 N.Y.2d 873, 874 (1995)); *see also Otero v. Eisenschmidt*, No. 01-CV-2562, 2004 WL 2504382, at *26 (S.D.N.Y. Nov. 8, 2004) (finding that the trial judge's "identification charge . . . was appropriate under New York law" where he "instructed the jury on its responsibility to find that identification was proven beyond a reasonable doubt and the 'paramount' importance of scrutinizing the witnesses' testimony and weighing their credibility"), *report and recommendation adopted*, No. 01-CV-2562 (S.D.N.Y. Dec. 9, 2004). "Measured against these standards, the trial court's decision not to include an additional cautionary instruction on eyewitness testimony was not erroneous." *Aparicio*, 269 F.3d at 100. Judge Del Giudice's instructions were correct. He explained that the prosecutor had to prove the petitioner's identity as the shooter beyond a reasonable doubt, and listed the factors the jury should consider in determining whether the identification testimony was reliable. (ECF No. 8-1 at 815, 820); *see also Aparicio*, 269 F.3d at 100 (holding that the trial court's identification charge "sufficed as an accurate statement of the law" because it "instructed the jury to assess the credibility of the witnesses" and "the trial judge repeatedly instructed the jury that they had to conclude beyond a reasonable doubt that the defendant was the perpetrator of every element of an offense before they could convict").

14

## CONCLUSION

The petition for writ of habeas corpus is denied in its entirety.  The case is dismissed.  A certificate of appealability will not be issued.  *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

                                                             s/Ann M. Donnelly  
                                                        ANN M. DONNELLY  
                                                        United States District Judge

Dated: Brooklyn, New York  
        May 17, 2022